```
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

ROGER LEE WOOD,

                    Plaintiff,         15-CV-6278
          -v-                          DECISION
                                       AND ORDER
CAROLYN W. COLVIN,
Acting Commissioner OF Social Security,

                    Defendant.
_____
```

Roger Lee Wood ("plaintiff") brings this action under Title II of the Social Security Act (the "SSA"), claiming that the Commissioner of Social Security ("Commissioner" or "defendant") improperly denied his application for disability insurance benefits ("DIB") prior to September 12, 2011.

Currently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, plaintiff's motion is granted and defendant's motion is denied.

## **PROCEDURAL HISTORY**

On November 21, 2011, plaintiff filed an application for DIB alleging disability as of June 26, 2009 due to cervical degenerative disc disease and bilateral knee pain. Administrative Transcript ("T.") 136-137, 145, 146, 149. On February 28, 2012, it was initially determined that plaintiff became disabled on September 12, 2011. T. 55. Following plaintiff's request for a hearing before an ALJ, plaintiff testified, by video, on October 2, 2013 before administrative law judge ("ALJ") Angela Miranda. T. 27-

54. Vocational expert ("VE") Howard Steinberg also testified and, at the hearing, the alleged onset of disability date was amended to November 15, 2010. T. 28. The ALJ issued a unfavorable decision on November 27, 2013. T. 9-24.

Considering the case *de novo* and applying the five-step analysis contained in the Social Security Administration's regulations (*see* 20 C.F.R. §§ 404.1520, 416.920), the ALJ made, *inter alia*, the following findings: (1) plaintiff met the insured status requirements of the SSA through December 31, 2014; (2) plaintiff had not engaged in substantial gainful activity since June 26, 2009, the originally alleged onset date; (3) his residual effect of remote C5-7 fusion and current evidence of adjacent bulges at C2-3 and C3-4 with herniation at C4-5 with stenosis and foraminal narrowing at those level, shoulder dysfunction with signs of mild impingement, and obesity were severe impairments; (4) his impairments, singly or combined, did not meet or medically equal the severity of any impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520[d], 404.1525, 404.1526); and (5) plaintiff has the residual functional ("RFC") capacity to perform light work as defined in 20 CFR 404.1567(b) with the following limitations: occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds; push and pull up to 20 pounds; stand and walk six to eight hours in an eight-hour workday and sit six to eight hours in an eight hour workday; frequently stoop, kneel, crouch, and climb stairs and ramps; occasionally crawl and

climb ladders, ropes or scaffolds; occasionally reach over head. T. 16.  The ALJ assessed no limitations to: understand, remember, and carry out multiple-step tasks, as consistent with the demands of a normal workday; appropriately interact with supervisors, coworkers, and the general public;  identify and avoid normal work place hazards; and adapt to changes in the work place. T. 16.  The ALJ further found that plaintiff is unable to perform any past relevant work, but considering his age, education, work experience, and RFC, there are a significant number of jobs in the national economy that plaintiff could perform. T. 19.

Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on March 11, 2015, and this action ensued. T. 1-4.

## DISCUSSION

I.  General Legal Principles

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405(g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).  This section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record.

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir.1999), *quoting Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir.1983) (per curiam). Section 405(g) limits the scope of the Court's review to two inquiries: (1) whether the Commissioner's findings were supported by substantial evidence in the record as a whole and (2) whether the Commissioner's conclusions are based upon an erroneous legal standard. *See Green-Younger v. Barnhart*, 335 F.3d 99, 105-106 (2d Cir.2003). "The Court [cannot] defer to the Commissioner's determination if it is the product of legal error." *Wilson v. Colvin*, 107 F. Supp. 3d 387, 401 (S.D.N.Y. 2015) (internal quotation marks omitted).

Plaintiff's impairments stem from his prior employment as corrections officer, during which he was hit with a pipe by an inmate. T. 32-34. His resulting injuries led to a cervical spine fusion in 2002. T. 33. Plaintiff, 59 years old at the time of his hearing, testified that, as of November 15, 2010, he experienced severe neck pain that prevented him from moving his head and caused left arm numbness. T. 35, 42. He also had difficulty sitting and sleeping at night. T. 39. Plaintiff testified that he was advised by his surgeon to avoid strenuous exercise and straining his neck. T. 35. His last year as a corrections officer consisted of office work and inmate processing and transportation. T. 46. He

frequently fell asleep at work and was unable to turn his head to look at inmates during transport. T. 47.

Plaintiff, a high school graduate, stood six feet and two inches tall and weighed 253 pounds. T. 36.  He had difficulty walking up and down stairs and getting undressed, and he occasionally drove to run errands and attend medical appointments every three to six months. T. 38-39, 40.  He was recently diagnosed with diabetes, as well as Barrett's esophagus, with blood pressure and cholesterol problems, among others. T. 40.  Plaintiff traveled to Florida in the winter and occasionally engaged in social activities, such as bingo, cards, and dancing, watching television, going for a walk with his granddaughter, fishing, grilling, household chores, and lying in the hot tub or pool. T. 43-45, 47.  Plaintiff treated his pain with Advil because prescription pain medication made him tired and lethargic. T. 43, 46.

II. <u>Remand is required because the ALJ failed to develop a complete record.</u>

Plaintiff contends that remand is warranted for the following reasons: (1) the ALJ failed to fully develop the record; (2) the RFC assessment is not based on substantial evidence; and (3) the ALJ's Step 5 finding is erroneous. Plaintiff's memorandum of law, p. 12-30.  Defendant responds that the ALJ's determination was based on substantial evidence in the record. Defendant's memorandum of law, p. 12-21.  The Court concludes that remand is warranted due to legal error because the ALJ failed to fully develop the record.

Plaintiff specifically contends that because the record does not contain any treatment notes between December 27, 2011 and the date of the ALJ's decision almost two year later, the ALJ failed to properly address this gap by failing to request any additional medical records, opinions, or treatment notes.  Defendant responds that the ALJ was not obligated to seek additional records where plaintiff's representative indicated at his hearing that the record was complete. Defendant's memorandum of law, p. 15.

Although "it is the plaintiff's burden to furnish such medical and other evidence of disability as the Secretary may require" (*Long v. Bowen*, 1989 WL 83379, at *4 [E.D.N.Y. 1989] [internal citations omitted]), the regulations require an ALJ to develop the record by obtaining a "complete medical history for at least the 12 months preceding the month in which [a claimant] file[s] [an] application." 20 C.F.R. § 404.1512(d).  Before making a disability determination, the ALJ may be responsible for "making every reasonable effort to help [a claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 404.1545 (emphasis supplied) (citing 20 C.F.R. §§ 404.1512[d] through [f]). While, as defendant asserts, the ALJ is not obligated to seek further medical records where the record evidence is sufficient for the ALJ to make a disability determination (*see Martinez-Paulino v. Astrue*, 2012 WL 3564140, *14 [S.D.N.Y. 2012]), in light of the significant gap here, compounded by other deficiencies in the ALJ's decision, it cannot be said that the record contains sufficient

6

evidence from which an ALJ can assess plaintiff's RFC residual functional capacity.

It is well established that "'[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Hogan v. Astrue*, 491 F. Supp.2d 347, 354 (W.D.N.Y. 2007), quoting Social Security Ruling 96-8p, 1996 WL 374184, *7 (S.S.A. 1996) and citing *Balsamo v. Chater*, 142 F.3d 75, 80-81 (2d Cir. 1998). Although the ALJ's decision does contain a narrative discussion of the medical evidence, the record is insufficient to permit the Court to determine whether the RFC determination is based on substantial evidence.

In his RFC assessment, the ALJ found that plaintiff was able to perform light work with the aforementioned limitations for the entire alleged disability period. At plaintiff's hearing, the ALJ asked plaintiff's representative whether "any additional evidence" was needed for the record. T. 31. The representative responded: "No, there is not. The record is complete." T. 31. However, as noted above, plaintiff later testified that he was continuing to receive treatment from at least one doctor, Gregory Ryan, his primary care physician, every three to six months. The record reveals that Dr. Ryan performed a full physical examination of plaintiff on July 20, 2010 and noted numerous active problems, including neck pain since 2009. The most recent treatment note by

7

Dr. Ryan contained in the record is dated December 20, 2011, when plaintiff was treated for obesity and back pain, among many other conditions.

Moreover, at Step Two in her decision, the ALJ wrote the following:

> "The evidence indicates [plaintiff's] alleged diabetes mellitus with oral medication regimen is not medically determined. [Plaintiff] testified his primary care provider recently diagnosed his with diabetes mellitus. Mr. Wood testified that he continued to see his primary care provider every three to six months and as needed, and [plaintiff's] representative indicated the record is complete. Allegations, alone, do make for a medically determined impairment."

T. 15.

The ALJ goes on to conclude that, despite the lack of any medical records or treatment notes from the period of the alleged diagnosis, plaintiff's diabetes (even had it been confirmed in the record) would not be severe under the regulations. However, there is no indication in the record or the ALJ's decision that she sought to obtain any additional treatment records from Dr. Ryan or plaintiff's other physicians. This constitutes legal error.

In determining plaintiff's RFC, it appears that ALJ relied primarily on treatment notes of orthopedist Dr. David Speach and the consultative opinion of Dr. Montalvo. The ALJ gave "limited weight" to Dr. Montalvo's assessment that plaintiff had mild to moderate limitations in bending, lifting, and reaching, and found that Dr. Montalvo "did not provide a quantifiable function-by-function in addressing [plaintiff's] abilities." T. 18. Noting

that Dr. Montalvo's February 10, 2012 examination report was "the most recent medical evidence in this record," the ALJ fails to address the weight accorded Dr. Montalvo's opinion that plaintiff had "limited ranges of motion" in his back, neck, and right shoulder and arm. T. 18.

In light of this clear gap in the administrative record, the Court rejects defendant's contention that the ALJ was not obligated to develop the record any further. The record evidence was insufficient for the ALJ to have made a disability determination, and, as such, she was obligated to seek further medical records. The ALJ notes that plaintiff's cervical spine dysfunction, "including the residual effects of spinal fusion at C5-7 and adjacent disc bulges," was treated conservatively following depression surgery at C5-7 levels in 2002. T. 17. Although ALJ frequently notes in her decision that plaintiff's treatment was conservative in nature, citing his physical therapy regime, only one month of physical therapy treatment notes, from November 30, 2011 through December 2011, are contained in the record. Despite the lack of medical treatment records following December 2011, the ALJ did not seek any further information from plaintiff's doctors or request medical opinions from either of plaintiff's treating physicians. This leaves the ALJ with an incomplete record upon which to reach her RFC determination, and, consequently, the Court cannot determine whether the RFC assessment is supported by substantial evidence.

Because the ALJ's failure to fully develop the record constitutes legal error, highlighted by the ALJ's improper substitution of her own opinion for that of a physician, remand is required. *See, e.g. Rosa v. Callahan*, 168 F.3d 72, 79-80 (2d Cir. 1999). It is, therefore, unnecessary for the Court to address plaintiff's remaining challenges to the ALJ's decision.

## **CONCLUSION**

For the reasons stated above, the plaintiff's motion for judgment on the pleadings (Docket No. 9) is granted, and defendant's cross-motion for judgment on the pleadings (Docket No. 10) is denied. The ALJ's determination denying plaintiff's claim for DIB is based on an insufficient record and it cannot be sustained by the Court. This case is remanded to the Commissioner for further proceedings consistent with this Opinion.

ALL OF THE ABOVE IS SO ORDERED.

                                                S/ MICHAEL A. TELESCA
                                      HONORABLE MICHAEL A. TELESCA
                                      UNITED STATES DISTRICT JUDGE

DATED:  Rochester, New York
          March 24, 2016